MARY'S OPINION HEADING 



 NO. 12-01-00022-CV



IN THE COURT OF APPEALS
 


TWELFTH COURT OF APPEALS DISTRICT



TYLER, TEXAS


WILMA EARL CAIN, WANDA CAIN-COOKS, § APPEAL FROM THE 

INDIVIDUALLY AND ON BEHALF OF THE

ESTATE OF KEITHAN EARL CAIN, DECEASED,

AND THEIR ATTORNEY, ANTHONY GULLEY,

APPELLANTS



 § COUNTY COURT AT LAW #2




KEELING ENTERPRISES, VINE TERRACE

APARTMENTS, AND JIM KEELING,

APPELLEES § SMITH COUNTY, TEXAS

 

PER CURIAM


 Wilma Earl Cain and Wanda Cain-Cooks, Individually and on Behalf of the Estate of
Keithan Earl Cain, Deceased, and their attorney, Anthony Gulley, (collectively "Appellants") appeal
from an order awarding $7,000.00 in monetary sanctions against them to be paid to Keeling
Enterprises d/b/a Vine Terrace Apartments, Vine Terrace Apartments, and Jim Keeling, (collectively
"Appellees"). In two issues, Appellants contend that the trial court erred. We reverse and render.


Background


 In May of 1997, Appellants and Alysia Madlock, as Next Friend of Kiara Cain and Jaylon
Cain ("Madlock"), filed suit alleging Appellees were responsible for the wrongful death of Keithan
Earl Cain. Appellees, after fifteen months of litigation, filed motions for sanctions against
Appellants and Madlock for a number of alleged discovery abuses. In September of 1998, the trial
court dismissed Appellants' and Madlock's suit, with prejudice. On appeal, our court reversed (1) this
death penalty sanction because lesser sanctions had not first been tried by the trial court as mandated
by our Supreme Court. See Transamerican Natural Gas Corp. v. Powell, 811 S.W.2d 913, 916
(Tex. 1991) (orig. proceeding). We remanded this matter to the trial court for further proceedings.

 Upon remand, Appellees filed a Supplemental Motion for Sanctions for Abuse of Discovery
Process and for Failure to Appear for Depositions of Plaintiffs. In this motion filed pursuant to Rule
215 of the Texas Rules of Civil Procedure, Appellees allege that Appellants and Madlock had
committed at least thirteen discovery and process abuses which included: (1) failing to identify the
identity of an expert although properly requested to do so; (2) submitting answers to interrogatories
which were evasive and vague; (3) representing the case was ready for trial when discovery was
incomplete due to their conscious indifference and failure to cooperate in the discovery process; (4)
failing to supplement their discovery responses when required to do so; (5) failing to appear for
properly noticed depositions; (6) failing to disclose the identity of any of their experts; (7) failing
to appear at the September 9, 1998, (2) sanctions hearing or even acknowledge it; (8) filing a non-suit
five days prior to their September 9, 1998, sanctions hearing in an attempt to avoid likely sanctions
as a result of their abuse of the discovery process; (9) filing a motion for new trial four days late and
mailing the motion to the County Clerk of Smith County rather than the District Clerk of Smith
County; (10) filing a notice of appeal and motion to extend time to file notice of appeal prior to
obtaining a ruling on their motion for new trial; (11) failing to file a docketing statement under the
appellate rules of procedure in their first appeal to the court of appeals; (12) filing a second suit
against Appellees identical to the original case which was still on appeal; and (13) failing to pay the
costs of their first appeal which had been assessed against them by the court of appeals.

 Appellees' attorney attached two affidavits to the supplemental motion stating that
$25,353.57 in attorneys' fees and expenses had been incurred "concerning the events made the
subject of this action." The trial court held hearings on Appellees' motion for sanctions on the 23rd
and 27th of October, 2000. Neither the Appellees, Appellants or Madlock (3) introduced any evidence
at these two hearings, but rather relied upon argument by counsel to the trial judge. Following the
October 27th hearing, the trial judge requested that Appellees furnish to her their invoices which
were "directly attributable to the delay in this matter." She specifically told Appellees to furnish a
copy of these invoices to the Appellants and Madlock. On October 31st, Appellees sent a letter to
the trial judge providing her with their invoices. However, the letter stated that these invoices were
being submitted only in camera for the court's review. Copies of these invoices were not furnished
to the Appellants or Madlock. The next day, on November 1st, the trial court signed an order
granting Appellees $7,000.00 in monetary sanctions specifically against Appellants. The order did
not reference Madlock. The trial court further stated that "all other claims for relief in this action
not expressly granted herein are denied."

 Also on November 1st, counsel for Madlock requested that the trial court enter an order
specifically showing that there were no sanctions against Madlock. On November 16th, the trial
court entered an "Order on Defendant's Supplemental Motion for Sanctions," which simply stated
that no financial sanctions or costs were levied against Madlock. On December 1, 2000, Appellants
filed a motion for new trial stating, among other things, that there was no evidence which enabled
the court to "find a direct relationship between the alleged offensive conduct and the sanction
imposed." This motion for new trial was overruled by operation of law. On January 31, 2001,
Appellants timely filed their notice of appeal.


Jurisdiction


 In their second issue, Appellants contend that the trial court's order of November 16, 2000,
was the final judgment in this proceeding, and that their appeal of the November 1st order should
be dismissed for lack of jurisdiction because it was an appeal of an interlocutory order. Appellees
respond that the trial court's November 1st order was a final and appealable order because it
disposed of all remaining issues and parties in the case. We agree with Appellees.

 To determine whether an order disposes of all pending claims and parties, it may be
necessary for the appellate court to look to the record in the case. Lehmann v. Har-Con Corp., 39
S.W.3d 191, 205-06 (Tex. 2001). In her order of November 1st, the trial court stated that the
$7,000.00 in monetary sanctions were being levied against the Appellants. Madlock's name was not
included in the list of those parties being sanctioned. At the October 27th hearing, the trial judge
stated, "I tell you right now I'm not going to sanction Ms. Madlock or the minor children." The only
claim before this court at the time of the November 1st order was monetary sanctions. A judgment
that actually disposes of every remaining issue in a case is not interlocutory merely because it recites
that it is partial or refers to only some of the parties or claims. Id. at 200. It is clear to us from a
review of the record that the November 1st order was the final order to be appealed and that the order
of November 16th only expressly stated what had been implied in the November 1st order, that
Madlock was not to be sanctioned. We have jurisdiction to consider this appeal. Appellants' issue
two is overruled.


Monetary Sanctions


 In their first issue, Appellants allege that the trial court abused its discretion in awarding
monetary sanctions because there is no evidence in the record establishing that they were just, as
mandated by Transamerican. The discovery sanctions are within the trial court's discretion and will
be set aside only if the court clearly abused its discretion. Bodnow Corp. v. City of Hondo, 721
S.W.2d 839, 840 (Tex. 1986). Our Supreme Court specifically lists two factors which mark the
bounds of the trial court's discretion in order for sanctions to be just. Transamerican, 811 S.W.2d
at 917. First, there must be a direct relationship between the offensive conduct and the sanction
imposed. Id. Second, the sanction imposed must not be excessive. In other words, the punishment
should fit the crime. Id.

 In determining what sanctions are appropriate, the court should consider the prejudice which
the objectionable conduct has caused the opposing party. Braden v. Downey, 811 S. W.2d 922, 929
(Tex. 1991). Just as sanctions should not substitute for an adjudication of the merits of the case, so
also a party should not be permitted to abuse the rules of procedure as to cause an opposing party
such unnecessary delay and expense that he is forced to forsake his position. Id. at 929-30. 
Monetary sanctions are appropriate to prevent a party from taking such unjust advantage of another. 
Id. at 930.

 Thirteen specific acts of sanctionable conduct were alleged by Appellants as described above. 
The trial court imposed a monetary sanction of $7,000.00. We first review the evidence to determine
if there was a direct relationship between these thirteen acts of alleged sanctionable conduct and the
monetary sanctions imposed.

 Here, no findings of fact and conclusions of law were requested by any of the parties. When
findings of fact and conclusions of law are not requested or filed, the judgment of the trial court must
be affirmed if it can be upheld on any legal theory that finds support in the evidence. Cantu v.
Harris, 660 S.W.2d 638, 640 (Tex. App.-Corpus Christi 1983, no writ). We have examined the
record to determine whether there is any probative evidence that might support implied findings of
fact. In the record before us, there are two affidavits signed by Appellees' counsel. These state the
number of hours expended by counsel and their staff for Appellees, as well as their hourly rates. No
detailed billing is described in these affidavits. Counsel further state that these expenditures of time
were made in "representing the interests of defendants concerning the events made the subject of this
action." Absent an objection at the time of trial, the trial court may properly consider an affidavit
as evidence. Naficy v. Breaker, 642 S.W.2d 282, 285 (Tex. Civ. App.-Houston [14th Dist.] 1982,
writ ref'd n.r.e.).

 Although the affidavits constitute probative evidence, they do not show a direct relationship
between the offensive conduct and the sanction imposed as required by Transamerican. There is
no evidence before us specifically tying the $7,000.00 to specific sanctionable conduct alleged by
Appellees. We do not know if the entire $7,000.00 in sanctionable costs was based on fees and
expenses incurred by Appellees for Appellants' failure to show up for the deposition, costs
associated with the first appeal to this Court, or the eleven other alleged acts of discovery or process
abuse. Thus, there is no evidence to establish the direct relationship between the offensive conduct
and the sanction imposed. See Transamerican, 811 S.W.2d at 917. Further, there is no evidence
for us to determine whether these sanctions were excessive. See id. The evidence does not support
the legal theories required to find the direct relationship that must exist between the offensive
conduct and the sanctions imposed. It is an abuse of discretion for a trial court to rule without
supporting evidence. Bocquet v. Herring, 972 S.W.2d 19, 21 (Tex. 1998).

 Appellees contend that their invoices submitted to the trial judge in camera on October 31,
would constitute evidence which would support the trial court's judgment of sanctions. Said
invoices were never admitted into evidence and are not in the appellate record before us. Further,
it is undisputed by Appellees that these invoices were not supplied in their post-hearing
correspondence to Appellants. Documentation submitted in camera without being furnished to the
opposing party does not provide the evidence necessary to obtain sanctions. See Global Services,
Inc. v. Bianchi, 901 S.W.2d 934, 938 (Tex. 1995). We hold that there is no evidence in the record
to support the court's implied findings that the monetary sanctions it levied against Appellants in
this matter were just. Appellants' issue one is sustained.

 Accordingly, we reverse the judgment of the trial court below and render judgment that
Appellees take nothing against Appellants.


Opinion delivered August 31, 2001.

Panel consisted of Davis, C.J., Worthen, J., and Griffith, J.






















(DO NOT PUBLISH)
1. Wilma Earl Cain, Wanda Cain-Cooks, Individually and on Behalf of the Estate of Keithan Earl Cain,
Alysia Madlock as Next Friend for Kiara Cain and Jaylon Cain v. Keeling Enterprises d/b/a Vine Terrace
Apartments, Vine Terrace Apartments, and Jim Keeling, No. 12-98-00321-CV (Tex. App.-Tyler October 28, 1999,
pet. denied) (not designated for publication).
2. On September 4, 1998, Appellants and Madlock non-suited their causes of action against Appellees after
the sanctions hearing on September 9, 1998, and the trial court dismissed Appellants' and Madlock's suit with
prejudice. As noted above, this death penalty sanction was the subject of the first appeal.
3. Madlock retained separate counsel for this hearing and also the new wrongful death suit filed by her and
Appellants after the non-suit of September 1998.